## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### (Western Division)

| | | |
|---|---|---|
| **SILENT STORM HOLDINGS, LLC** | : | **CASE NO. 1:18-cv-00094** |
| 928 Angelica Lane | : | |
| Tega Cay, South Carolina 29708 | : | Judge |
| | : | |
| Plaintiff, | : | COMPLAINT |
| | : | |
| v. | : | |
| | : | |
| **WFG NATIONAL TITLE** | : | |
| **INSURANCE COMPANY** | : | |
| 16700 Valley View, Suite 275 | : | |
| La Mirada, California 90638 | : | |
| | : | |
| Defendant. | : | |

Plaintiff, Silent Storm Holdings, LLC ("Silent Storm"), by and through its undersigned counsel, sues Defendant, WFG National Title Insurance Company ("WFG"), state as follows upon investigation of counsel and information and belief for its complaint:

### Allegations Common to All Counts

### The Parties

1. Silent Storm is a North Carolina limited liability company and is registered to do business in the State of Ohio. Its sole member is Philip McHugh, who is a citizen of and resides in North Carolina.

2. WFG is a South Carolina corporation and is licensed by the Ohio Department of Insurance to issue title insurance in the State of Ohio.

3. Pursuant to 28 U.S.C. § 1332, this Court has subject matter jurisdiction over this case, as there is complete diversity among the parties and the amount in controversy exceeds $75,000.

4. Pursuant to 28 U.S.C. § 1391, this Court is the proper venue for this controversy because a substantial part of the events or omissions giving rise to the claim occurred within the Southern District of Ohio.

**The Transaction**

5. In early 2015, Mandrina Investments Ohio, LLC ("Mandrina"), and its principal, Robert Collinsworth ("Mr. Collinsworth"), contacted Silent Storm about the possibility of making a loan (the "Transaction") to Mandrina and Mr. Collinsworth so that Mandrina could purchase 15 parcels of real property (the "Properties") located in Hamilton County, Ohio.

6. Silent Storm agreed to loan Mandrina and Mr. Collinsworth the sum of $500,000.00, which obligation would be evidenced by a promissory note (the "Note") and secured by a mortgage (the "Mortgage") on the Properties.

**WFG's Agent Fails to Offer Closing Protection Coverage to Silent Storm**

7. Mandrina and Mr. Collinsworth designated Benchmark Escrow & Title Agency, LLC ("Benchmark"), as the closing and title agent for the Transaction.

8. Benchmark is a duly-authorized agent of WFG, and as such has the authority, among other things, to issue title insurance and closing protection coverage on behalf of WFG.

9. Pursuant to Ohio Revised Code § 3953.32 (the "CPC Statute"), Benchmark was required at the time the order was placed for the issuance of a title insurance policy to offer closing protection coverage ("Closing Protection Coverage") to Silent Storm. The CPC Statute provides:

**3953.32 Offer of closing or settlement protection to parties.**

(A) At the time an order is placed with a title insurance company for issuance of a title insurance policy, the title insurance company or the title insurance agent shall offer closing or settlement protection to the lender, borrower, and seller of the property, and to any applicant for title insurance.

(B) The closing or settlement protection offered pursuant to this section shall indemnify any lender, borrower, seller, and applicant that has requested the protection, both individually and collectively, against the loss of settlement funds resulting from any of the following acts of the title insurance company's named title insurance agent or anyone acting on the agent's behalf:

(1) Theft, misappropriation, fraud, or any other failure to properly disburse settlement, closing, or escrow funds;

(2) Failure to comply with any applicable written closing instructions, when agreed to by the title insurance agent.

(C) The issuance of closing or settlement protection by a title insurance company pursuant to division (A) of this section is part of the business of title insurance for purposes of Chapter 3953. of the Revised Code.

(D) Except as provided in division (A) of this section, a title insurance company shall not offer or issue any coverage purporting to indemnify against a person's improper acts or omissions in connection with escrow, settlement, or closing services.

(E) The superintendent of insurance may adopt rules in accordance with Chapter 119. of the Revised Code as the superintendent considers necessary to carry out the purposes of this section, including, but not limited to, rules that detail the specific language that must be included in

the written document offering closing or settlement protection as provided for in division (A) of this section.

10. During the relevant time frame, the form that Ohio title agents and underwriters were required to use to offer Closing Protection Coverage is attached hereto as **Exhibit A,** which is approved and mandated by the Ohio Department of Insurance as Form CP-24.1 ("Form CP-24.1").

11. During the relevant time frame, the form that Ohio title agents were required to issue Closing Protection Coverage is attached hereto as **Exhibit B,** which is approved and mandated by the Ohio Department of Insurance as Form CP-24 ("Form CP-24). In pertinent part, Form CP-24 provides:

> Dear Customer:
>
> When title insurance is specified in connection with closing of the above-described real estate transaction (the "Closing")in which Closing you are the Covered Party hereunder with an interest in land or a lender secured by a mortgage (including any other security interest) of an interest in land, Blank Title Insurance Company (the "Company"), subject to the Conditions and Exclusions set forth below, hereby agrees to reimburse you for actual loss incurred by you in connection with the Closing, when such Closing is conducted by the above named Licensed Agent (an agent licensed and authorized to issue title insurance in the State of Ohio for the Company) and where such loss arises out of:
>
> 1. Theft, misappropriation, fraud or any other failure of the Licensed Agent, or anyone acting on the Licensed Agent's behalf, to properly handle and disburse your funds or documents in connection with such Closing; or
>
> 2. Failure of the Licensed Agent, or anyone acting on the Licensed Agent's behalf, to comply with any applicable written closing instructions, when agreed to by the Licensed Agent, to the extent that they relate to: (a) the status of the title to said interest in land or the marketability thereof as insured or the validity, enforceability and priority of the lien of said mortgage on said interest in land, including the obtaining of documents and the disbursement of funds necessary

to establish such status of title or lien; or (b) the obtaining of any other document, specifically required by you, but only to the extent the failure to obtain such other document affects the status of the title to said interest in land or the validity, enforceability and priority of the lien of said mortgage on said interest in land, but not to the extent that said instructions require a determination of the validity, enforceability or effectiveness of such other document.

12. The closing (the "Closing") of the Transaction took place at Benchmark on February 6, 2015.

13. Benchmark never submitted Form CP-24.1 to Silent Storm for review or execution, or otherwise offered Closing Protection Coverage to Silent Storm.

14. Benchmark did, however, charge and collect $40.00 on line number 1106 of the closing statement for the Transaction for "Closing Protection," which was the Ohio statutory fee for lender's Closing Protection Coverage. A copy of the closing statement (the "Closing Statement") from the Transaction is attached hereto as **Exhibit C**.

15. Had Benchmark complied with the CPC Statute and offered Closing Protection Coverage to it, Silent Storm would have accepted the offer and executed Form CP-24.1. Even without Silent Storm's election on Form CP-24.1, however, Benchmark collected for the issuance of Closing Protection Coverage to Silent Storm, and WFG should be compelled to honor the coverage obligations in Form CP-24.

16. Benchmark obtained signatures from the other parties (Mandrina and the Sellers) to the Transaction on Form CP-24.1, copies of which are attached hereto as **Exhibit D**, in which they declined Closing Protection Coverage.

2877752.2

## WFG's Agent Fails to Discharge Closing Duties

17. The executed Closing Statement constitutes written closing instructions from Silent Storm.

18. At Closing, Benchmark disbursed $70,572.58 to McIntosh Family Properties, LLC ("McIntosh"), which is indicated on line number 104 of the Closing Statement. McIntosh was purportedly owed money by Mandrina and/or Mr. Collinsworth for an assignment of the purchase contract for the Properties.

19. At Closing, Silent Storm instructed Benchmark to verify that Mandrina and/or Mr. Collinsworth had paid to McIntosh the sum of $167,000.00, which was purportedly the remaining sum owed to McIntosh for the assignment of the purchase contract for the Properties. Benchmark replied to Silent Storm that it had verified the $167,000 payment and would indicate the same on the Closing Statement, which amount is shown on line number 104. Silent Storm relied to its detriment upon Benchmark's representation that Mandrina and/or Mr. Collinsworth had paid $167,000.00 to McIntosh.

20. After Closing, later on the same day, Mr. Collinsworth and the owner of McIntosh returned to Benchmark's offices and requested that the $70,572.58 check payable to McIntosh be split into two checks: (a) a check for $11,000.00 payable to McIntosh, and (b) a check for $59,572.58 payable jointly to McIntosh and Mr. Collinsworth (the "Joint Check"). Benchmark complied with the request and issued these two checks, which disbursements were in violation of the Closing Statement.

21. As a result of this improper disbursement, Mr. Collinsworth received $59,572.58 from Closing, which was in violation of the Closing Statement.

22. Benchmark failed to ask Silent Storm whether it consented to Mr. Collinsworth receiving $59,572.58 from the Closing.

23. Had Benchmark informed Silent Storm that McIntosh and Mr. Collinsworth were requesting the Joint Check, Silent Storm would have immediately objected and demanded that Benchmark terminate the Closing and stop payment on all disbursements made at Closing.

24. Benchmark's issuance of the Joint Check in violation of the Closing Statement triggers Closing Protection Coverage of Form CP-24, in that it constitutes "[t]heft, misappropriation, fraud or any other failure of the Licensed Agent, or anyone acting on the Licensed Agent's behalf, to properly handle and disburse your funds or documents in connection with such Closing."

25. The purported $167,000.00 payments outside of closing from Mandrina/Mr. Collinsworth to McIntosh, which Benchmark claimed it had verified and placed on the Closing Statement, were never made.

26. Accordingly, instead of Mr. Collinsworth and Mandrina putting $167,000.00 into the Transaction, Mr. Collinsworth was able to convince Benchmark to disburse the Joint Check in violation of the Closing Statement, which allowed him to receive $59,572.58 from the Transaction.

27. Moreover, although Benchmark had Mandrina execute quit-claim deeds in favor of Silent Storm to further secure repayment of the Note, it released the originals of said deeds to Mr. Collinsworth, which was in violation of closing instructions given by Silent Storm.

### WFG's Bad Faith Handling of Silent Storm's Claim

28. On or about June 26, 2015, Mandrina and Mr. Collinsworth defaulted on their payment obligations under the Promissory Note and Mortgage.

29. In or about August 2015, Silent Storm contacted Benchmark regarding the quit-claim deeds that were supposed to be held in escrow and demanded that they be recorded.

30. On or about August 24, 2015, Benchmark contacted WFG and reported that Silent Storm was asking that the quit-claim deeds be recorded, and asked for advice from WFG concerning the issue. Benchmark's inquiry was referred to Samuel Shellhaas, SVP and National Agency Counsel ("Mr. Shellhaas"). Upon information and belief, this is the first point in time that WFG knew of issues relating to Benchmark's mishandling of its duties as closing agent of the Transaction.

31. While communicating with Benchmark about the recording of the quit-claim deeds, Silent Storm learned: (a) that Benchmark, in violation of closing instructions given to it, had allowed Mr. Collinsworth to take the quit-claim deeds from the Closing; (b) that Benchmark had improperly disbursed $59,572.58 to Mr. Collinsworth.

32. In or about May 2016, Silent Storm noticed that Benchmark had collected $40.00 on the Closing Statement for "Closing Protection."

33. On or about May 20, 2016, Paul Bessent ("Mr. Bessent"), contacted Mr. Shellhaas to inquire about the "Closing Protection," for which Silent Storm had been charged on the Closing Statement. In response to Mr. Bessent's inquiry, Mr. Shellhaas e-mailed a document (the "WFG CPC Form") named "Ohio CPC Example.pdf," a copy of

Page **8** of **19**

2877752.2

which is attached hereto as **Exhibit E**. This WFG CPC Form is not Form CP-24 that is approved by the Ohio Department of Insurance.

34. Among the differences in the WFG CPC Form and Form CP-24 is numbered paragraph 1 ("Paragraph 1"). In Form CP-24, Paragraph 1 reads:

1. Theft, misappropriation, fraud or any other failure of the Licensed Agent, or anyone acting on the Licensed Agent's behalf, to properly handle and disburse your funds or documents in connection with such Closing; or

In the WFG CPC Form, Paragraph 1 reads:

1. Theft, misappropriation, fraud or any other failure of the Licensed Agent, or anyone acting on the Licensed Agent's behalf, to properly handle and disburse your funds or documents in connection with such Closing **to the extent such fraud or dishonesty relates to the status of the title to said interest in land or the marketability thereof as insured, or to the validity, enforceability, and priority of the lien of said mortgage on said interest in land**; or

(emphasis added)

35. By adding the additional language to Paragraph 1 of the WFG CPC Form that appears in bold in paragraph 34 above (the "Additional Language"), WFG sought to effectively eliminate any meaningful protection for the lender in the handling of funds relating to the transaction.

36. The Additional Language had been suggested to the Ohio Department of Insurance shortly after the CPC Statute came into effect, but the department rejected the Additional Language because it eliminates the protection required by the CPC Statute. Instead, since 2008, the Ohio Department of Insurance has mandated the use of Form CP-24. Thus, the WFG Form violates the Ohio Revised Code including sections 3953.32 and

3953.28. Based on WFG's representation, it has been issuing the illegal WFG CPC Form for nearly a decade.

37. On May 22, 2016, Silent Storm submitted a Notice of Claim form to WFG, a copy of which is attached hereto as **Exhibit F**, in which Silent Storm reported, among other things "Misrepresentations on HUD, Fraudulent POC Line Items, Failure to Disclose Disbursements Accurately, and Failure to Secure Quit Claim Deeds."

38. WFG assigned Silent Storm's claim to Jesse Cortese ("Mr. Cortese"), Claims Counsel.

39. On June 6, 2016, Mr. Cortese wrote an e-mail to Silent Storm, a copy of which is attached hereto as **Exhibit G**, in which he denied the claim and stated that the items described in the Notice of Claim do not constitute matters covered under the title insurance policy.

40. On June 6, 2016, Mr. Bessent, on behalf of Silent Storm, responded by e-mail to Mr. Cortese, a copy of which is attached hereto as **Exhibit H**, and stated:

> Thank you for the response. I am aware that the title policy would not have coverage for the items you mentioned. The title policy information was provided to give you the information on the properties and a reference to the policy provided by WFG. I was not directed to any other claim form for the "closing protection" claim.
>
> The "closing protection" sample letter was requested and received from WFG. Charges for the coverage are shown on the HUD.
>
> The items described in the NOC were for claims against the "closing protection" policy. If there is a different claim form, please forward.
>
> Please review the claim as a claim against "closing protection" coverage.

41. On June 8, 2016, Mr. Bessent wrote an e-mail to Mr. Cortese and asked: "Will you be able to process claim under 'closing protection' with the information you now have or is a other [sic] form required?"

42. On June 10, 2016, Mr. Cortese responded by e-mail that "No other forms are required."

43. On June 10, 2016, Mr. Cortese asked Mr. Bessent to send any documents supporting Silent Storm's claim for Closing Protection Coverage, including the Closing Statement, any closing protection letters that may apply, and a statement of Silent Storm's claim as it related to Closing Protection Coverage. Moreover, Mr. Cortese stated that the claim appeared to relate to a "post-closing matter."

44. On June 12, 2016. Mr. Bessent responded to Mr. Cortese and sent the WFG CPC Form that Mr. Shellhaas had sent to him, attached a copy of the Closing Statement, attached a copy of the Joint Check, and described the nature of Silent Storm's claim.

45. On June 20, 2016, Mr. Bessent wrote an e-mail to Mr. Cortese and stated: "As we begin the process, would you please determine if WFG issued or there is evidence of a letter, policy, certificate, notation or any method in which coverage, as outlined in the sample letter [the WFG CPC Form that had been provided to Mr. Bessent by Mr. Shellhaas], applied at any time during this transaction?"

46. On June 20, 2016, Mr. Cortese wrote a letter to Mr. Bessent, a copy of which is attached hereto as **Exhibit I,** denying Silent Storm's claim. As justification, Mr. Cortese contended that no Closing Protection Coverage was issued to Silent Storm

Page **11** of **19**

2877752.2

(despite the $40.00 payment for the same), Silent Storm had not submitted any documents evidencing Closing Protection Coverage, there was over a one-year delay in submitting the claim to WFG (thereby allegedly excluding any Closing Protection Coverage that might exist), and Silent Storm's claim related solely to the quit-claim deeds and, therefore, was a post-closing issue.

47. On June 21, 2016, Mr. Cortese wrote to Benchmark, thanking its title agent for confirming that Closing Protection Coverage was not issued to Silent Storm.

48. On July 14, 2016, Donald P. McFadden ("Mr. McFadden"), counsel for WFG, wrote to Mr. Bessent, instructed that all future communications be directed to him, and claimed on behalf of WFG that there was no Closing Protection Coverage issued to Silent Storm.

49. By letter dated July 20, 2016, a copy of which is attached hereto as **Exhibit J**, counsel for Silent Storm wrote to Mr. McFadden and explained in detail the improper disbursements from Closing, and that Silent Storm was making a Closing Protection Coverage claim.

50. On August 29, 2016, Mr. McFadden wrote to counsel for Silent Storm and contended that the "WFG closing protection coverage provided is standard in Ohio. The lender, closing protection claim was filed more than a year after the closing. There is no closing protection coverage for late claims. The lender provided no written instructions. The settlement amounts were correct. The lender received a mortgage which conveyed a marketable title: the mortgage was valid and enforceable. There is no title claim."

51. On or about September 7, 2016, Silent Storm filed a complaint with the Ohio Department of Insurance, a copy of which is attached hereto as **Exhibit K**, which detailed the improper disbursements from Closing, Benchmark's failure to issue Closing Protection Coverage, and WFG's bad faith denial of its Closing Protection Coverage claim.

52. By letter dated September 13, 2016, a copy of which is attached hereto as **Exhibit L**, counsel for Silent Storm wrote to Jeffrey Dodanville, National Claims Counsel for WFG, explained in detail the improper disbursements from Closing, and demanded that WFG grant Closing Protection Coverage to Silent Storm.

53. By letter dated September 15, 2016, a copy of which is attached hereto as **Exhibit M**, counsel for Silent Storm wrote to Mr. McFadden and, again, explained in detail the improper disbursements from closing, and that Silent Storm was making a Closing Protection Coverage claim.

54. By letter dated October 13, 2016, a copy of which is attached hereto as **Exhibit N**, Mr. Jeffrey S. Leung, Senior Vice President for WFG, responded to the Ohio Department of Insurance, and contended:

    a. There was no improper act of the agent that related to the status of title;

    b. There were no written closing instructions;

    c. The value of the property is not a covered matter;

    d. Silent Storm received a valid mortgage lien on the Properties;

    e. Silent Storm's notice of claim was late;

2877752.2

f. All monies were disbursed in amounts as instructed; and

g. Payments outside of closing are not the title agent's responsibility.

In this letter, Mr. Leung relies upon Closing Protection Coverage language from the WFG CPC Form, and not the Ohio-approved form, CP-24.

55. All conditions precedent to the filing of this action have been satisfied, waived, or have otherwise occurred.

## **Count 1 – Declaratory Judgment**

56. Silent Storm realleges and incorporates herein by reference paragraphs 1 through 55.

57. This is an action for a declaratory judgment pursuant to 28 U.S.C. § 2201 to determine and declare the rights of the parties with respect to Closing Protection Coverage.

58. Silent Storm claims:

a. That Benchmark had the obligation under the CPC Statute to offer Closing Protection Coverage to Silent Storm and obtain its election on Form CP-24.1;

b. That Benchmark failed to offer Closing Protection Coverage to Silent Storm;

c. Had Benchmark offered Closing Protection Coverage to Silent Storm, it would have executed Form CP-24.1 and accepted said coverage;

d. That Benchmark charged $40.00 on the Closing Statement for Closing Protection Coverage for Silent Storm; and

e. That WFG has the obligation to issue Closing Protection Coverage as described in the CPC Statute and Form CP-24 because Silent Storm was not afforded the opportunity to elect said coverage and was charged for said coverage.

59. WFG disputes Silent Storm's position and either claims that Silent Storm is not entitled to Closing Protection Coverage or that the WFG CPC Form governs this dispute and coverage is excluded or otherwise not available under said form.

60. Moreover, WFG contends that any Closing Protection Coverage that theoretically could be available to Silent Storm is excluded because Silent Storm allegedly failed to give notice of the Closing Protection Coverage claim within one year.

61. Silent Storm claims that its notice of its Closing Protection Coverage claim is timely because, alternatively: (a) WFG had notice of closing irregularities in August 2015; (b) because Benchmark never issued Form CP-24 (or any other form) to Silent Storm, it cannot be charged with the one-year notice requirement stated therein; (c) Silent Storm gave notice of the Closing Protection Coverage claim within one year of discovering Benchmark's errors in the Closing; and (d) WFG suffered no prejudice by the notice given by Silent Storm.

62. Thus, there are disputes between the parties that constitute bona fide, actual, and present controversies.

63. Silent Storm has a power, privilege, or right that is dependent upon the application of law to the facts alleged above.

2877752.2

64. All parties hereto have an actual, present, adverse and antagonistic interests in the facts described above.

65. All persons and entities with an antagonistic or adverse interest in the subject of this dispute are before this Court.

66. The declaration sought pertains to a present, ascertained state of facts or present controversy as to a state of facts, as set forth above.

67. Further, the relief sought is not merely the giving of legal advice by the courts or the answer to questions propounded from curiosity.

WHEREFORE, Silent Storm respectfully requests that this Court:

(a) Declare that WFG must issue Closing Protection Coverage in the form mandated by the CPC Statute and Form CP-24;

(b) Declare that the WFG CPC Form violates the CPC Statute and is unlawful and unenforceable;

(c) Declare that Benchmark's inappropriate actions in connection with the Closing trigger Closing Protection Coverage provided in Form CP-24;

(d) Declare that WFG must reimburse Silent Storm, pursuant to the terms of Form CP-24, for its losses incurred in connection with the Closing;

(e) Declare that WFG handled Silent Storm's claim in bad faith;

(f) Determine the amount of damages owed to Silent Storm, including punitive damages;

(g) Award to Silent Storm its attorneys' fees and costs incurred in connection with pursuing its claims against WFG, and any other and further relief as the Court may deem proper.

## Count 2 – Breach of Contract

68. Silent Storm realleges and incorporates herein by reference paragraphs 1 through 67.

69. This is an action for breach of contract resulting in damages exceeding $75,000.

70. WFG has breached its obligations under Form CP-24 by, among other things, failing to reimburse Silent Storm for its losses incurred in connection with the Closing.

71. Silent Storm has been damaged by WFG's breach of its obligations.

WHEREFORE, Silent Storm respectfully requests this Court to enter a judgment against WFG for damages (including without limitation costs of enforcement of the Note and Mortgage, and costs of preservation of the Properties), prejudgment interest, attorneys' fees costs, and such other and further relief that this Court deems just and appropriate.

## Count 3 – Bad-Faith Claim Handling

72. Silent Storm realleges and incorporates herein by reference paragraphs 1 through 71.

73. At all times relevant to this action, WFG had a duty to act in good faith and deal fairly with Silent Storm.

2877752.2

74. WFG breached these duties by, among other things, not acknowledging Silent Storm's Closing Protection Coverage, sending the false and misleading WFG CPC Form that is not the Ohio-approved form, failing to diligently investigate and respond to Silent Storm's claim, and failing to reimburse Silent Storm for its damages associated with the Closing.

75. This bad-faith conduct was undertaken consciously, deliberately, and with reckless disregard to the interests of Silent Storm's rights under the Closing Protection Coverage and justifies the award of punitive damages.

76. As a consequence, Silent Storm has suffered actual and reasonably foreseeable consequential damages.

WHEREFORE, Silent Storm respectfully requests this Court to enter a judgment against WFG for damages, punitive damages, prejudgment interest, attorneys' fees costs, and such other and further relief that this Court deems just and appropriate.

Respectfully submitted this 9th day of February 2018.

/s/ Toby K. Henderson
Toby K. Henderson (0071378)
SEBALY SHILLITO + DYER
A Legal Professional Association
1900 Kettering Tower
40 North Main Street
Dayton, Ohio 45423
(937) 222-2500
(937) 222-6554 (Fax)
thenderson@ssdlaw.com

and

Richard Thomas Petitt, Esq.
PETITT WORRELL ROCHA PLLC
100 North Tampa Street, Suite 3575
Tampa, FL  33602
Rich@petittworrell.com
(813) 603-6300
(813) 603-6301 (fax)
*Co-Counsel for Plaintiff*
 *Pro Hac Vice Admission Pending*